**C. Thomas RYTHER, Plaintiff,**

v.

**KARE 11, an NBC affiliate and a division of Combined Communications Corp., an Arizona corporation and Gannett Co., Inc., a Delaware corporation, Defendants.**

Civ. No. 4–91–943.

United States District Court,
D. Minnesota,
Fourth Division.

Sept. 13, 1994.

See also, 864 F.Supp. 1525.

Donna L. Roback, and Larkin, Hoffman, Daly & Lindgren, Bloomington, MN, for plaintiff.

Thomas Tinkham, Karen Clauson Maki, and Dorsey & Whitney, Minneapolis, MN, for defendants.

## ORDER

DOTY, District Judge.

This matter is before the court on defendants' motions for judgment as a matter of law and, in the alternative, a new trial and a reduction of damages. Based on a review of the file, record and proceedings herein, the court denies defendants' motions.

## BACKGROUND

C. Thomas Ryther ("Ryther") worked as a sports anchor at Channel 11 from December 1979 until July 1991, pursuant to a series of three year contracts. In 1988, Janet Mason became the vice president of news at KARE 11, which is owned by Gannett. At that time, Ryther was the sports director and lead sports anchor. The sports department included Jeffrey Passolt ("Passolt") and Randy Shaver ("Shaver"), both under age 40. Ryther appeared on the six o'clock and ten o'clock news and hosted a weekly show during the football season. Passolt did a sports feature on the five o'clock news and was a reporter and weekend anchor along with Shaver.

In 1988, KARE 11 assigned Passolt to host the weekly football show. The following year Linda Rios–Brook ("Brook") was named the station manager at KARE 11. During 1989, Mason switched Ryther from the six o'clock news to a sports segment feature on the five o'clock news. Passolt became the sports anchor at six o'clock and Ryther continued to anchor the ten o'clock sports. Ryther worried that the loss of air time would adversely impact his visibility. In March 1990, Mason rated Ryther's performance as "commendable," the second highest mark possible. Two months later, Mason named Shaver executive producer of sports, a title that belonged to Ryther under his contract. Shaver assumed many of Ryther's organizational and planning duties. Ryther agreed to the change based on Mason's assurance that he would retain the right of final approval on all planning matters. However, according to Ryther, the promise was not honored and he was excluded by Mason and others from key planning decisions.

In June 1990, defendants hired the Gallup Organization ("Gallup") to assess audience reaction to certain on-air personalities in the Twin Cities market. Gallup surveyed a random sample of viewers using a "Q score technique" and open-ended questions. The Q score technique consists of multiple choice questions concerning viewer recognition and approval of on-air personalities. The Q score is widely used in the media industry to show viewer attachment to a personality by measuring the percentage of viewers who recognize the person and the percentage of viewers who are strongly favorable or strongly unfavorable of that person. The information obtained from open-ended questions provides a more complete picture of what viewers think about key personalities.

KARE 11 directed Gallup to use the Q score technique to measure the strength of 25 on-air personalities, including Ryther. The research results indicated that Ryther was well known in the market but his impact on viewers was less positive than the other lead anchors at KARE 11 and Mark Rosen ("Rosen"), the lead sports anchor at a competing station. Ryther's positive impact was slightly higher than that of Passolt who was not as well known in the market. KARE 11 also instructed Gallup to ask open-ended questions about 10 local personalities, including the other lead anchors at KARE 11, Passolt and Rosen.[1] KARE 11 did not ask the viewers such questions about Ryther. After evaluating the viewer data, Gallup recommended changing the lead sportscasters at KARE 11 and suggested that Passolt may have more "potential." According to defendants, the decision not to renew Ryther's contract was made in August 1990 based on the results of the Gallup research. In the

---

1. For example, Gallup asked viewers "How would you describe Jeff Passolt? What comes to mind that you particularly like or dislike about him as a newscaster?"

fall of 1990, Mason removed Ryther's salary from the sports department budget but did not tell him of defendants' decision.

In early 1991, Ryther discovered he was being excluded from promotions. Ryther asked Brook about the status of his contract and she referred him to Mason. On March 6, 1991, Mason told Ryther, then 53 years old, that his contract would not be renewed when it expired at the end of July. Mason said that Ryther had failed in the Twin Cities market and explained that the decision not to renew his contract was based on the 1990 Gallup research. On July 16, 1991, Ryther held a press conference to announce he had filed an age discrimination claim with the Equal Employment Opportunity Commission. KARE 11 took Ryther off the air the same day but compensated him for the last two weeks of his contract. Ryther brought suit against defendants alleging defamation and age discrimination and retaliation in violation of federal and state law.

An eight day jury trial was held in September 1993. The ultimate issue in the case turned on whether a legitimate or an illegitimate set of considerations led to defendants' decision not to renew Ryther's contract. At the close of plaintiff's case, defendants moved for judgment as a matter of law on all claims. The motion was granted as to Ryther's defamation claim but was otherwise denied. The remaining claims were submitted to the jury at the close of evidence. The jury returned a verdict for Ryther on his age discrimination claim and awarded $272,444.00 in back pay and $433,330.30 in front pay. The jury also found that defendants' violation of the ADEA was willful. The jury found in favor of defendants on the retaliation claim.

Defendants now move for judgment as a matter of law claiming that the court erred in not holding as a matter of law that Ryther failed to establish that age was a determining factor in the decision not to renew his contract and failed to prove willfulness. In the alternative, defendants move for a new trial based on certain evidentiary rulings and certain jury instructions given and refused by

the court. Defendants also claim that the damage award should be reduced because the award of front pay is speculative and Ryther failed to mitigate his damages.

## DISCUSSION

### 1. Judgment As A Matter of Law

Defendants assert that Ryther's contract was not renewed because his research was poor, he was not contributing to the station's success and his work performance was unsatisfactory. Ryther contends the reasons offered by defendants for his discharge are pretextual and that age was the motivating factor for not renewing his contract. Defendants insist that Ryther failed to demonstrate a link between his age and the decision not to renew his contract. They also argue that there was no evidence of pretext that focused on the specific reasons offered by defendants.

 Defendants as a proponent of a motion for judgment as a matter of law confront a difficult standard. In ruling on a motion for judgment as a matter of law, the court must consider the evidence in the light most favorable to Ryther, assume that the jury resolved all conflicts in favor of Ryther, assume as true all facts which Ryther's evidence tended to prove and give Ryther all favorable inferences which may reasonably be drawn from proved facts. *Hall v. State Farm Fire & Cas. Co.,* 813 F.2d 137 (8th Cir.1987).[2] The court must deny the motion if reasonable jurors could differ as to the conclusions that could be drawn from the evidence. *Id.*

### A. Ryther's Prima Facie Case

 To make a prima facie case of age discrimination, Ryther must show that: (1) he was within the protected age group, (2) his job performance was satisfactory; (3) his contract was not renewed; and (4) defendants assigned a younger person with no better credentials to do the same work. *Haglof v. Northwest Rehabilitation Inc.,* 910

---

**2.** The 1991 amended version of Rule 50(b) changed the terminology, but not the standard articulated in long-standing case law. *See* Fed.

R.Civ.P. 50 advisory committee's note on 1991 amendment.

F.2d 492, 493 (8th Cir.1990). *See e.g.,* *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Proof of a prima facie case allows Ryther to benefit from a presumption of discrimination. At that point, defendants may rebut the prima facie case by coming forward with a legitimate, nondiscriminatory reason for not renewing Ryther's contract. Once the prima facie case has been rebutted, Ryther must carry his ultimate burden of persuasion by proving that defendants intentionally discriminated against him based on age. *See, e.g., Nelson v. Boatmen's Bancshares, Inc.,* 26 F.3d 796, 801 (8th Cir.1994).

■ At this stage, the court looks to the ultimate factual issue of whether the evidence is sufficient to allow the jury to infer that age was a determining factor in defendants' decision not to renew Ryther's contract. Although the sufficiency of Ryther's showing of a prima facie case need not be analyzed, the court briefly addresses defendants' contention that Ryther failed to establish a prima facie case of age discrimination. Despite defendants' arguments to the contrary, the court finds that Ryther proved the elements of a prima facie case of age discrimination by a preponderance of the evidence.

■ There is no dispute that Ryther was within the protected age group when his contract was not renewed. Defendants assert that Ryther did not meet their legitimate expectations because he was not drawing substantial viewers. Defendants mistakenly equate their proffered reason for not renewing Ryther's contract with whether he established a prima facie case. The claim that Ryther failed to attract viewers goes to the issue of whether there was a legitimate business reason for defendants' actions. Excluding defendants' proffered reasons for not renewing Ryther's contract, there is ample evidence, including positive performance appraisals, to support the finding that Ryther's performance was satisfactory.[3]

■ Defendants also assert that Ryther failed to state a prima facie case because he

was not replaced by a younger person. The evidence was sufficient to show that Ryther was replaced by Passolt, who was 37 years old when he took over as lead sports anchor at KARE 11. During the term of Ryther's last contract, Passolt replaced Ryther as the sportscaster at six o'clock. In March 1991, Mason offered the ten o'clock sportscast to Passolt and Passolt was later promoted to the ten o'clock newscast after Ryther was removed from the air. Viewed in the light most favorable to Ryther, the jury could reasonably conclude that Passolt replaced Ryther by assuming his former duties as lead sports anchor. There was also evidence from which the jury could reasonably find that KARE 11 systematically transferred duties performed by Ryther to younger members of the sports department during his last contract.

## B. Sufficiency of the Evidence

The court now turns to the critical issue at hand; whether the evidence was sufficient for the jury to reasonably conclude that defendants intentionally discriminated against Ryther because of his age. Defendants assert they are entitled to judgment as a matter of law based on the testimony of the decision makers that Ryther's contract was not renewed because of the Gallup research. It is clear that the jury believed Ryther's evidence and did not believe defendants' proffered explanation. Construing the record in Ryther's favor, the court finds that he produced evidence sufficient to discredit defendants' nondiscriminatory reason for not renewing his contract.

■ This is not a case, however, where the employer's proffered reason is wholly without merit or obviously contrived. Thus, to carry his ultimate burden of persuasion, Ryther must do more than discredit defendants' proffered explanation. Ryther must also present evidence sufficient to show that conduct by decision makers reflects a discriminatory attitude based on age and that

---

**3.** In March 1990 Ryther was rated "commendable." While this was not the highest possible rating, it did indicate that "work is done quickly and accurately; total job responsibilities are met." The written appraisal also contained several positive remarks about Ryther's performance. Ryther's previous performance appraisals rated his work as "superior."

the real reason defendants decided not to renew his contract was age discrimination. Whether Ryther's evidence was sufficient to support the jury's verdict is a close question. After carefully reviewing the record, however, the court concludes that the jury reasonably could have found that defendants were motivated by a discriminatory animus based on Ryther's age.

Based on the evidence presented, the jury reasonably could have concluded that defendants made the decision not to renew Ryther's contract before the Gallup research was even undertaken. There was evidence that between 1988 and 1990 KARE 11 transferred many of Ryther's duties to his younger counterparts. The jury reasonably could have concluded that the transfer of these duties to younger members of the sports department indicated not only that defendants had already decided not to renew Ryther's contract, but also that defendants' conduct reflected a discriminatory attitude based on Ryther's age.

In March 1990 several middle managers rated Ryther as transitional and identified areas needing improvement. Defendants never communicated these appraisals to Ryther. Rather, Mason rated Ryther as commendable, indicating that "work is done quickly and accurately; total job responsibilities are met." Mason explained that the higher rating was neither accurate or based on Ryther's work performance. Instead Mason said she gave Ryther a higher rating because she feared an emotional outburst and believed Ryther would perform better if he received a commendable rating. The jury reasonably could have rejected the explanation provided by Mason as contrived. Mason's fear of an overly emotional reaction is belied by her telling Ryther that he had "failed in the market" when she revealed that his contract would not be renewed. Moreover, the jury could reasonably infer that Mason did not disclose the appraisals to Ryther because the decision not to renew his contract had been made and, thus, Mason did not want to provide Ryther with an opportunity to correct any perceived deficiencies.

The evidence presented by Ryther also allowed the jury to reasonably draw the inference that defendants knew the research, as designed, would not provide a complete picture of what viewers thought about Ryther. In designing the research, KARE 11 directed Gallup to ask open-ended questions about key personalities, including the other lead anchors at KARE 11, Passolt and Rosen. However, KARE 11 did not ask such questions concerning Ryther. Defendants explained that the survey would have been too lengthy and that similar questions had been asked about Ryther in a 1989 research project. The 1989 research, however, also posed open-ended questions about Rosen and Passolt. The jury reasonably could have found that the length of the survey was a trivial factor and, thus, was not the true reason why defendants omitted Ryther from the open-ended questions.

Taking this evidence in Ryther's favor, the jury reasonably could have concluded that omitting Ryther from the open-ended questions signalled that defendants had already decided not to renew his contract. The jury could also draw the inference that defendants merely hoped the research results would confirm the decision they had already made rather than provide detailed information about Ryther's impact on the viewing audience. The jury could also attribute unsavory motives to defendants given the long delay between the research results and the time Ryther was told that his contract would not be renewed. Again, the jury reasonably could have inferred that defendants did not want to provide Ryther with an opportunity to address any perceived weaknesses.

Defendants also admitted that a higher standard was used to evaluate Ryther than was applied to Passolt. Defendants explained that the different standards were justified because Ryther was the primary sports anchor occupying a "front four" position and Passolt was a less experienced, secondary anchor. The jury, of course, was entitled to reject defendants' explanation or characterization of the roles of Ryther and Passolt. Viewed in favor of Ryther, the evidence was sufficient for the jury to reasonably find that age, not the roles and experience of Ryther and Passolt, was the real

reason defendants held the anchors to different standards.

In the years preceding the Gallup survey, defendants assigned Passolt to replace Ryther as the host of a weekly football show. Passolt was also promoted to the six o'clock news and Ryther was switched to a less visible sports feature on the five o'clock news. Although Ryther continued to anchor the sports at ten o'clock, the jury could reasonably conclude that at the time of the survey Passolt was a "key personality" at KARE 11. That conclusion finds support in the fact that KARE 11 considered two female anchors who alternated between newscasts as key personalities. It also finds support in defendants' decision to ask open-ended questions about Passolt but not about Ryther. Thus, the evidence would permit the jury to reasonably reject the explanation that defendants treated Ryther and Passolt differently because of the roles they occupied at KARE 11. The jury could also reasonably infer that defendants treated Ryther differently than his younger counterpart because of his age.

Other circumstantial evidence also supports the jury's verdict. The jury could have reasonably found that defendants emphasized youthful appearances. Defendants admitted they believed the bags under Ryther's eyes detracted from his appearance and they discouraged Ryther from wearing glasses. Mason stated that she once considered allowing Ryther to wear glasses because she felt the glasses might help cover the bags under his eyes that lighting and make-up could not remove.

There was also evidence that others in the sports department frequently made comments about Ryther's age. Shaver and others called Ryther "old man" and "old fart" and said he was "too old for the business." The remarks were not made by or in the presence of the decision makers or senior management. The remarks standing alone do not raise an inference of discrimination. There was evidence, however, that Shaver and Mason had frequent discussions about Ryther. Thus, the jury could have reasonably inferred that Mason knew of the discriminatory attitude on the part of Shaver and others in the sports department.

Finally, there was evidence that defendants forced other older employees to choose between demotions or early retirement. Several of the older employees were suddenly given poor performance reviews after receiving years of superior ratings. Defendants contend that evidence concerning the older employees was not relevant because they were not on-air talent and, therefore, were not similarly situated to Ryther. Although the situations of the older employees and Ryther differ in some respects, the court finds there were enough similarities to render the evidence relevant and admissible. The court also concludes that a jury could reasonably find that defendants intentionally built poor performance cases against older employees, including Ryther.

After reviewing all the evidence in the light most favorable to Ryther and giving him the benefit of all favorable inferences, the court concludes there was sufficient evidence for the jury to reasonably infer that Ryther's age was more likely than not a motivating factor in defendants' decision not to renew his contract. While the court considers the issue to be close, and although it may have reached a different result had it been the factfinder, the court's task is to examine the sufficiency of the evidence, not to act as the trier of fact. *Nelson*, 26 F.3d at 803. (quotation omitted). The court concludes that the evidence was sufficient to support the jury's finding of intentional age discrimination.

**C. Willfulness**

Defendants also contend that the evidence was insufficient to support the jury's finding that defendants willfully violated the ADEA. A plaintiff is entitled to liquidated damages, or double damages, if the employee can prove that the employer willfully violated the ADEA. *Hazen Paper Co. v. Biggins*, —— U.S. ——, ——–——, 113 S.Ct. 1701, 1708–10, 123 L.Ed.2d 338 (1993). A violation of the ADEA is not willful merely because the employer knew the ADEA was "in the picture." *Trans–World Airlines, Inc. v. Thurston*, 469 U.S. 111, 132–33, 105 S.Ct. 613, 628, 83 L.Ed.2d 523 (1985);

*Biggins,* —— U.S. at ——, 113 S.Ct. at 1709. A violation of the ADEA is willful if "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the statute." *Biggins,* —— U.S. at ——, 113 S.Ct. at 1710; *Brown v. Stites Concrete, Inc.,* 994 F.2d 553, 558–59 (8th Cir.1993) (en banc). "Once a 'willful' violation has been shown, the employee need not additionally demonstrate that the employer's conduct was outrageous, or provide direct evidence of the employer's motivation, or prove that age was the predominant rather than a determinative factor in the employment decision." *Biggins,* —— U.S. at ——, 113 S.Ct. at 1710. In reviewing a jury's finding of willfulness, the sole relevant determination is whether the evidence meets the standard that the employer "either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [ADEA]." *Brown,* 994 F.2d at 560.

 The court concludes that the jury could have reasonably inferred that defendants knew their conduct violated the ADEA. It is clear that defendants were more than merely aware of the ADEA statute. Defendants had employment policies which stated they would not discriminate against any member of a protected class. A former program director at KARE 11 said that defendants instructed managers on procedures to guard against age discrimination and prevent accusations of age discrimination. Defendants assert that they had no reason to know their reliance on the Gallup research could later be construed as discriminatory. The jury concluded, however, that defendants' decision not to renew Ryther's contract was not based on the market research. As the court has noted, the jury could reasonably infer that defendants made the decision not to renew Ryther's contract before the research was undertaken and, rather than inform Ryther, began building a poor performance case against him. This is not a case where the employer incorrectly, but in good faith, believed that the statute permitted a particular age-based decision. *See, e.g., Biggins,* —— U.S. at ——, 113 S.Ct. at 1709. Although the court may have reached a different result, the court concludes that there was sufficient evidence for a reasonable jury to find that defendants' willfully violated the ADEA by not renewing Ryther's contract.

## 2. Motion For A New Trial

 A new trial may be ordered under Fed.R.Civ.P. 50(b) and 59(a) when the verdict is against the clear weight of the evidence, is the result of passion or prejudice or is clearly excessive. *Ouachita Nat. Bank v. Tosco Corp.,* 686 F.2d 1291, 1294 (8th Cir.1982). While the standard for granting a new trial is less stringent than for judgment as a matter of law, a new trial shall be granted only to prevent injustice or when the verdict strongly conflicts with the great weight of evidence. *Fireman's Fund Ins. Co. v. Aalco Wrecking Co., Inc.,* 466 F.2d 179, 186 (8th Cir.1972), *cert. denied,* 410 U.S. 930, 93 S.Ct. 1371, 35 L.Ed.2d 592 (1973). The court is not free to set aside a verdict merely because it would have ruled differently, or believes that the jury should have drawn different inferences and conclusions from the conflicting testimony. *Id.* at 186–87.

 The true standard for granting a new trial on the basis of the weight of the evidence is simply one which measures the result in terms of whether a miscarriage of justice has occurred. *Id.* at 187. Defendants contend that justice requires a new trial in this case. The court has already concluded that the verdict reached by the jury in this case is adequately supported by the evidence. Of course, defendants or other reasonable persons could differ about the correct outcome, but the verdict does not work an injustice or fall against the great weight of the evidence.

 Defendants also move for a new trial asserting that the court erroneously ruled on certain evidentiary matters and that certain jury instructions were erroneously given or refused by the court. Not all errors require a new trial. The court should grant a new trial only if it finds that an error "misled the jury or had a probable effect on its verdict." *E.I. du Pont de Nemours v. Berkley & Co., Inc.,* 620 F.2d 1247, 1257 (8th Cir.1980). Rule 61 of the Federal Rules of Civil Procedure provides that:

No error or defect in any ruling or order or in anything done or omitted by the court ... is ground for granting a new trial ... unless refusal to take such action appears to the court inconsistent with substantial justice. The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties.

The burden of proving harmful error rests on the party moving for a new trial.

## A. Jury Instructions

 The instructions given to a jury must be read as a whole and considered in light of the entire charge. *Williams v. Valentec Kisco, Inc.,* 964 F.2d 723, 731 (8th Cir.1992). The court is not bound to give the jury instructions requested by the litigants. Rather, "the form and language of jury instructions are committed to the sound discretion of the district court so long as the jury is correctly instructed on the substantive issues in the case." *Id.* Although defendants purport to "assign as error the failure to give each requested instruction or portion of instruction not given and the giving of each instruction to which objection was posed," they focus on four omissions which they consider particularly prejudicial. For the following reasons, the court holds that a new trial is not warranted based on the instructions given to the jury.

### (1) Instruction Number 20

 Defendants claim that instruction number 20 given by the court omitted the "essence of the prevailing law on age discrimination." Defendants contends the court's language was inadequate because it failed to instruct the jury that plaintiff retained the burden of persuading them that his contract was not renewed because of his age. They also contend that instruction number 20 allowed the jury to find discrimination based solely on the first phase of the *McDonnell Douglas* analysis. The court finds these contentions lack merit.

Instruction number 20 was drawn primarily from § 106.03 of 4 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions: Civil,* (4th ed. 1987). The court also considered the Supreme Court's decision in *St. Mary's Honor Center v. Hicks,* —— U.S. ——, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). Despite defendants' contention to the contrary, instruction number 20 in no way intimated that Ryther could prevail simply by establishing a prima facie case. The jury was instructed that it could find for Ryther only if he proved that age was a determining factor in defendants' decision not to renew his contract. The jury was also instructed that, because defendants had offered a legitimate, non-discriminatory reason for their actions, to prevail Ryther had to prove that the proffered reason was a pretext or cover-up for defendants' intentional age discrimination. Thus, the jury was properly instructed that Ryther had the burden of proving defendants' reasons were pretextual and that he was, in fact, a victim of intentional age discrimination. The court holds that instruction number 20 was not erroneous as it fairly and adequately presented the substantive law.[4]

### (2) Defendants' Proposed Instruction Number 3

 Defendants contend that the court erred by failing to give their requested jury instruction number 3 verbatim. Defendants proposed an instruction which combined §§ 70.03 and 71.08 of 4 Devitt, Blackmar & Wolff, *Federal Jury Practice and Instructions: Civil,* (4th ed. 1987). Defendants claim they were prejudiced by the omission of the proposed language that "[a]nything you may have seen or heard outside the courtroom is not evidence and must be entirely disregarded." Defendants drew that language from § 70.03 of Devitt, Blackmar & Wolff.

Section 70.03, a preliminary instruction, addresses what constitutes evidence. Before the case began, the court gave the preliminary instruction from the Bench Book for

---

4. Moreover, instruction number 20 was buttressed by the other instructions given by the court. Instruction number 4 stated that Ryther had the burden "to prove every essential element of his claim by a preponderance of the evidence." Instruction number 5 further explained what it meant for a party to have the burden of proof on a given proposition.

United States District Court Judges, which communicated the substance of § 70.03 to the jury before the beginning of the case. The court repeatedly admonished the jury throughout the trial that they could not read, view or consider any news coverage or any other information about the case. The court finds that the jury was properly instructed to disregard information from other sources and to decide the case based solely on the evidence presented at trial. In lieu of defendants' instruction, the court instructed the jury almost verbatim from § 71.08 of Devitt, Blackmar & Wolff. The court concludes that the instruction given was accurate and addressed the substance of defendants' requested instruction. The exclusion of the exact language proposed by defendants was not erroneous and did not result in prejudice.

(3) Defendants' Proposed Instruction Number 15

■■■ Defendants claim that the court erred by failing to give their requested jury instruction number 15 concerning discriminatory remarks in the workplace.[5] Defendants relied on two Eighth Circuit cases as authority for their proposed instruction. *See Radabaugh v. Zip Feed Mills, Inc.,* 997 F.2d 444, 449 (8th Cir.1993); *Beshears v. Asbill,* 930 F.2d 1348, 1354 (8th Cir.1991). These cases discussed remarks in the workplace in the legal context of determining whether a plaintiff was entitled to a mixed-motive instruction as established by *Price Waterhouse v. Hopkins,* 490 U.S. 228, 258, 109 S.Ct. 1775, 1794–95, 104 L.Ed.2d 268 (1989). In both cases, the Eighth Circuit concluded that "stray remarks" do not suffice to invoke the *Price Waterhouse* formula. The *Price Waterhouse*

method of proof was not employed in this case. Thus, defendants failed to cite any authority which provided direct guidance on the necessity or propriety of a jury instruction on this issue.

■■■ The court has discretion to refuse any instruction that is not entirely correct. The gist of defendants' instruction was that only remarks by decision makers involved in the decisional process could support an inference of discrimination. However, there was evidence from which the jury could have reasonably inferred that the statements made by Shaver and others in the sports department were conveyed to Mason, a decision maker who played a key role in the decisional process. Although Mason denied any knowledge of the statements, her credibility was properly left for the jury to decide.

The court concludes that the instruction requested by defendants improperly characterized the law as it related to this case. Here the significance of the discriminatory remarks turned on the resolution of disputed facts. The instruction at issue would have removed this factual determination from the jury. The court concludes that it properly exercised its discretion in declining to give defendants' instruction number 15. Given the evidence of discrimination apart from the discriminatory remarks, the court also notes that no prejudice resulted from the error defendants allege.

(4) Defendants' Proposed Instruction Number 16

Defendants contend that the court erred by failing to give their requested jury instruction number 16 verbatim.[6] Defendants

---

5. Defendants' proposed instruction number 15 stated that:

Not all comments that reflect a discriminatory attitude will support an inference that age was a determining factor in an employment decision. You must distinguish between comments that demonstrate age discrimination in the decision process and comments made by individuals closely involved in the employment decision from stray remarks in the workplace, statements by non-decisionmakers, and statements by decisionmakers unrelated to the decisional process. The latter types of comments do not support an inference that age was a determining factor in an employment decision.

6. Defendants' instruction stated:

If you find that plaintiff has initially established an inference of age discrimination, as I have just defined it for you, then you must consider whether KARE 11 has presented a nondiscriminatory reason for its actions. The burden on KARE 11 is minimal. KARE 11 bears only the burden of producing evidence to demonstrate reasonable factors other than age for not renewing plaintiff's contract. The ultimate burden of persuasion remains with plaintiff.

An employer is entitled to rely in good faith on broadcast market research as an appropriate,

complain that the court erroneously failed to instruct the jury on the minimal nature of their burden of production. Defendants also contend the court erred by not instructing the jury that reliance on market research is an appropriate basis for making decisions in the broadcast industry. These contentions lack merit.

■■■■■ At trial, defendants asserted that Ryther's contract was not renewed because his research results were poor and he was not contributing to the station's success. Defendants also cited Ryther's unsatisfactory work performance. Under *McDonnell Douglas,* the employer meets its burden of production simply by producing evidence of nondiscriminatory reasons for its actions. *Hicks,* —— U.S. at ——, 113 S.Ct. at 2748. At the charge conference, defendants argued that they had carried their burden of production. The court agreed and, accordingly, instructed the jury that "[d]efendants have offered evidence of legitimate, non-discriminatory reasons for their actions, therefore, plaintiff must prove by a preponderance of the evidence that the reasons offered by defendants are merely a pretext or cover-up for intentional age discrimination." Jury Instruction No. 20.

The instruction given explicitly told the jury that the reason proffered by defendants, namely the market research results, was a legitimate, non-discriminatory reason for their actions. The court rejected defendants' language that "an employer is entitled to rely in good faith on broadcast market research as an appropriate, nondiscriminatory basis for making personnel decisions in the broadcast industry." Although defendants offered expert testimony concerning the heavy reliance the media industry places on market research, the court was not obligated to take judicial notice of that fact. The ultimate issue here, whether defendants' actions were motivated by the research results or Ryther's age, was, of course, an issue properly left to the jury to decide.

■■■■■ Defendants also complain that the court's instructions impermissibly allowed the jurors to substitute their own judgment

nondiscriminatory basis for making personnel

for the employer's judgment.. This argument borders on being frivolous. The court explicitly instructed the jury:

> You may not consider whether the reasons given by defendants constitute a good or bad business decision. You may not return a verdict for plaintiff just because you disagree with defendants' decision or believe it to be harsh or unreasonable.

Jury Instruction No. 20. The court's language was drawn from the Eighth Circuit's decision in *Walker v. AT & T Technologies,* 995 F.2d 846, 849–50 (8th Cir.1993), and the model instructions for the Eighth Circuit. *See* The Bar Association of Metropolitan St. Louis, Model Civil Rights in Employment Jury Instructions for the Eighth Circuit § 7.03(a) (1989). While the court did not adopt the exact language proposed by defendants, it concludes that the instruction given properly stated the substantive law about an employer's right to make business judgments absent unlawful discrimination.

**B. Evidentiary Rulings**

■■■ Defendants also seek a new trial based on certain evidentiary rulings. Defendants challenge rulings made concerning employment actions and the release of age discrimination claims by former KARE 11 employees and an offer of an alternative position to Ryther. The mere existence of evidentiary errors is not a sufficient basis for a new trial. Rather a new trial is appropriate under Rule 59 only when "an evidentiary ruling was so prejudicial as to require a new trial which would be likely to lead to produce a different result." *O'Dell v. Hercules, Inc.,* 904 F.2d 1194, 1200 (8th Cir.1990). The court concludes that a new trial is not warranted in this case as no error was committed that prejudiced the substantial rights of defendants.

Several witnesses who testified at trial were former KARE 11 employees who reached severance or separation agreements with defendants. The agreements required the former employees to release all potential claims against defendants, including claims of age discrimination. The court concluded that the severance agreements did not fall

decisions in the broadcast industry.

within the bar of Rule 408 of the Federal Rules of Evidence. *See Cassino v. Reichhold Chems., Inc.,* 817 F.2d 1338, 1343 (9th Cir. 1987) (Rule 408 does not bar admission of an agreement to release potential claims as part of a severance pay package). The court also recognized that evidence of agreements between defendants and former employees was relevant and admissible to show bias. Given the nature of the evidence, however, the court took care to properly limit its introduction in order to prevent unfair prejudice to defendants.

Defendants' claim that evidence was admitted concerning six severance agreements is unfounded. Defendants seem to raise a belated objection to statements made by Ryther's counsel during her opening statement. Any challenge to the opening statement has been waived, however, as defendants failed to object at trial. Limited testimony concerning claims released via severance agreements was allowed at trial.[7] The evidence was admitted to assist the jury assess the credibility of certain witnesses. Defendants contend the evidence was offered to improperly suggest that KARE 11 had admitted it discriminated against former employees on the basis of their age. Despite this concern, defendants never requested a limiting instruction. The court concludes that the admission of the challenged evidence was not erroneous. The court also notes that if any evidentiary error occurred it was not so prejudicial as to warrant a new trial.

Defendants also claim the court erred by not admitting evidence of an offer of alternative employment to Ryther. They claim evidence of the job offer should have been allowed to refute Ryther's claim that he was never offered an alternative position.[8] Defendants also assert the offer of employment was relevant to mitigation. The offer to which defendants refer was extended by defendants' attorneys on the condition that Ryther not file any discrimination claims against defendants. The offer involved a sports reporter position paying up to $50,000. The offer was made after Ryther indicated he was filing claims of age discrimination with the EEOC and was quickly withdrawn once he indicated he would pursue his claims. Because the offer of employment was extended only on the precondition that Ryther not pursue his claims of age discrimination and was subsequently withdrawn, the court concludes that it had little, if any, relevance to the issues identified by defendants. Accordingly, the court concludes that the exclusion of the evidence was not erroneous. The court also notes that if any error occurred it was not so prejudicial as to warrant a new trial.

Finally, defendants complain the court erred by admitting evidence concerning the employment circumstances and separation from employment of other former employees. Defendants assert the evidence concerning the other employees was not relevant as they were not similarly situated to Ryther either because they were not on-air talent or they were affected by employment decisions made by others unrelated to the decision not to renew Ryther's contract.

While the situations of the other former employees and Ryther differ in some respects, the court finds there was a sufficient, although not overwhelming, showing of a pattern and practice of discrimination to warrant admission of the evidence offered by Ryther. The evidence was relevant to the issue of pretext and aided the jury's ability to assess whether defendants acted with a legitimate or illegitimate motive. As with the severance agreements, the evidence admitted concerning other employment circumstances was carefully circumscribed by the court. The court concludes that the admission of the challenged evidence was not erroneous. The court also notes that if any evidentiary error

---

7. The court notes that defendants offered testimony concerning a severance package during the direct examination of one of their witnesses. The court also sustained numerous defense objections to questions designed to elicit detailed information about various severance agreements and the release of potential claims of age discrimination.

8. At trial, Ryther testified that defendants did not offer him an alternative position. Mason and Brook also testified that Ryther was not offered another position at the time of his termination.

occurred it was not so prejudicial as to warrant a new trial.

### 3. Motion to Reduce Damage Award

 Defendants assert that the amount of the verdict should be reduced for two reasons. Defendants contend the amount of the front pay award is speculative. Defendants argue the award assumes that Ryther's contract would have been renewed twice with him remaining employed in the same position for six additional years. Front pay, by its nature, is somewhat speculative. The award here, taking into account salary as well as fringe benefits and pension loss, seems to reflect the amount Ryther would have earned during the course of one additional three year contract. Although the damages awarded by the jury are generous, the front pay is adequately supported by the evidence and is not unduly speculative.

Defendants also assert that the back pay award should be reduced because Ryther failed to use reasonable efforts to mitigate his damages. The burden of proof on mitigation rests with the defendants. The court rejects defendants' challenge to jury instruction number 30 and holds that the jury was properly instructed on the substantive law of mitigation. There is ample evidence from which the jury could have reasonably concluded that Ryther used reasonable efforts to obtain alternative employment and mitigate his damages. Accordingly, the court denies defendants' motion to reduce the back pay and front pay damages awarded by the jury.

### CONCLUSION

The evidence supports the jury's verdict. After reviewing all the evidence in the light most favorable to Ryther and giving him the benefit of all favorable inferences, the court concludes there was sufficient evidence for the jury to reasonably infer that Ryther's age was more likely than not a motivating factor in defendants' decision not to renew his contract. The court also concludes that a new trial is not warranted in this case as no error was committed that prejudiced the substantial rights of defendants. The court also denies defendants' motion to reduce the damages award. Based on the foregoing, **IT IS** **HEREBY ORDERED** that defendants' motions for judgment as a matter of law and for a new trial or a reduction of damages are **DENIED.**